**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DEBORAH ANN SWITZER, | ) | CASE NO. 1:13-CV-01919 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | | |

Plaintiff, Deborah Ann Switzer ("Plaintiff"), challenges the final decision of

Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security

("Commissioner"), denying her application for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423 and 1381(a).  This

Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the

undersigned United States Magistrate Judge pursuant to the consent of the parties

entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below,

the Commissioner's final decision is REVERSED and REMANDED for proceedings

consistent with this opinion.

## I.  PROCEDURAL HISTORY

On August 23, 2010, Plaintiff filed her application for SSI and alleged a disability

onset date of September 15, 2009.  (Transcript ("Tr.") 11.)  The application was denied

initially and upon reconsideration, and Plaintiff requested a hearing before an

administrative law judge ("ALJ").  (*Id.*)  On January 4, 2012, an ALJ held Plaintiff's

hearing.  (*Id.*)  Plaintiff participated in the hearing, was represented by counsel, and testified.  (*Id.*)  A vocational expert ("VE") also participated and testified.  (*Id.*)  On March 12, 2012, the ALJ found Plaintiff not disabled.  (Tr. 8.)  On August 13, 2013, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On September 1, 2013, Plaintiff filed her complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 14, 15, 16.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in finding that Plaintiff's impairment did not meet and/or equal Listing 12.05(C); and (2) the ALJ erred in failing to find that Plaintiff's learning disorder was a severe impairment.

## II.   EVIDENCE

### A.   Personal and Vocational Evidence

Plaintiff was born in August 1968 and was 41-years-old on the date she filed her application.  (Tr. 20.)  She had a limited education and was able to communicate in English.  (*Id.*)  She had no past relevant work.  (*Id.*)

### B.   Medical Evidence

#### 1.   Physical Impairments

##### a.   Medical Reports

On September 8, 2010, Plaintiff saw Hemalatha Senthilkumar, M.D., for complaints of back pain after she injured her low back two weeks prior while lifting heavy material at work.  (Tr. 268.)  On examination, Dr. Senthilkumar noted that Plaintiff

2

had a normal gait; her spine was not tender; her straight leg raise was negative; her lower extremity strength was 5/5; and she had only mild paraspinal muscle tenderness. (Tr. 269.)  A September 10, 2010, x-ray of Plaintiff's sacrum showed a few scattered phlebolitis in the pelvic region, but was otherwise normal.  (Tr. 326.)  An x-ray of Plaintiff's lumbar spine from the same day did not show any abnormal findings.  (Tr. 329.)

On December 29, 2010, Plaintiff was admitted to the emergency room with complaints of low back pain.  (Tr. 518.)  On examination, her back appeared normal and her range of motion was painless.  (Tr. 519.)  Plaintiff was diagnosed with a lumbar myofascial strain and was treated with a muscle relaxer and Motrin.  (*Id.*)

On April 4, 2011, Plaintiff visited the emergency room again with complaints of low back pain after injuring her back while lifting groceries.  (Tr. 506.)  On examination, her back was non-tender, her range of motion was painless, straight leg raising was negative, and she had a steady gait. (Tr. 507, 510.)  Plaintiff was diagnosed with low back pain.  (Tr. 507.)

On September 18, 2011, Plaintiff sought emergency room treatment for left shoulder pain.  (Tr. 544.)  On examination, Plaintiff had normal range of motion.  (Tr. 545.)  She also had a normal mood/affect, clear speech, and normal cognition, and she was awake and cooperative.  (Tr. 545, 547.)  X-rays of Plaintiff's left shoulder were negative for fracture and showed no acute osseous abnormality.  (Tr. 543.)

### b.    Agency Reports

On May 10, 2011, state agency physician Teresita Cruz, M.D., reviewed Plaintiff's medical records and concluded that there was insufficient evidence in the file

3

to evaluate Plaintiff's physical condition, because Plaintiff failed to attend her consultative examination.  (Tr. 59.)  On July 21, 2011, another state agency physician, Rannie Amiri, M.D., reviewed Plaintiff's medical records and determined that Plaintiff did not have a severe physical impairment.  (Tr. 70.)

### 2.    Mental Impairments

#### a.    School Reports

On March 22, 1984, during her ninth grade year, Plaintiff underwent IQ testing and scored a 68 in general intelligence, 67 in verbal intelligence, and 70 in performance intelligence.  (Tr. 255.)  School records indicate that Plaintiff functioned within the "developmentally handicapped range of intelligence," but that academically she performed somewhat above her ability level.  (Tr. 257.)

#### b.    Medical Reports

During the relevant period, Plaintiff was diagnosed with depressive disorder, not elsewhere classified, and prescribed an antidepressant by Dr. Senthilkumar, her primary care physician.  (Tr. 269.)

On March 1, 2011, Plaintiff saw David House, Ph.D., for a consultative psychological evaluation.  (Tr. 494-502.)  Plaintiff reported that she was not married and that she had ten children.  (Tr. 495.)  She stated that she got along okay with her mother and siblings, but claimed that she had no friends.  (*Id.*)  She reported a history of drug and alcohol abuse.  (*Id.*)  Dr. House noted that given Plaintiff's history, it appeared she abused alcohol and smoked five cigarettes a day.  (*Id.*)

Plaintiff stated that she was in special education classes in high school and

advanced to the eleventh grade, but dropped out of high school when she became pregnant.  (*Id.*)  She reported that she had been depressed for the past several years, but she denied episodes of crying.  (Tr. 497.)  She had experienced thoughts about ending her life, with the most recent episode occurring a couple months prior to the exam.  (*Id.*)  When asked why she applied for disability, Plaintiff stated it was because of her depression.  (Tr. 496.)

Dr. House noted that Plaintiff had some deficits in sensorium and cognitive functioning.  (Tr. 498.)  Plaintiff scored a 59 full scale IQ on the Wechsler Adult Intelligence Scale-IV test.  (Tr. 499.)  Dr. House opined that Plaintiff's full scale IQ placed her in the mildly mentally retarded range of adult intellectual functioning.  (Tr. 499.)  He also noted that Plaintiff "seemed capable of managing her activities of daily living which would suggest her intellectual limitations are academic."  (Tr. 500.)  Dr. House concluded that a diagnosis of borderline intellectual functioning seemed more appropriate "especially given her history of alcohol abuse."  (*Id.*)  He diagnosed Plaintiff with depressive disorder, not otherwise specified (NOS) and alcohol abuse.  (*Id.*)

Dr. House opined that Plaintiff was moderately impaired in her ability to understand, remember, and follow instructions; withstand stress and pressures associated with day-to-day work activity; relate to others, including fellow co-workers and supervisors; and adapt.  (*Id.*)  He also opined that Plaintiff's insight into her current situation and her overall level of judgment were moderately impaired.  (*Id.*)  Dr. House concluded that Plaintiff's ability to maintain concentration, persistence, or pace to perform simple repetitive tasks was markedly impaired.  (*Id.*)

5

On August 30, 2011, Plaintiff began an intensive outpatient program for alcohol dependence.  (Tr. 552.)  She listed one of her goals as obtaining a job and also indicated that she would be interested in vocational rehabilitation.  (*Id.*)  On October 26, 2011, Plaintiff began a non-intensive outpatient treatment program for cocaine dependency.  (Tr. 539.)

### b.    Agency Reports

On March 25, 2011, state agency psychologist Patricia Semmelman, Ph.D., reviewed Plaintiff's medical records and completed a Psychiatric Review Technique and a Mental Residual Functional Capacity (RFC) assessment.  (Tr. 59-63.)  Dr. Semmelman opined that Plaintiff had mild restrictions in her activities of daily living and moderate restrictions in maintaining social functioning and maintaining concentration, persistence, or pace.  (Tr. 59-60.)  In assessing Plaintiff's RFC, Dr. Semmelman opined that Plaintiff's ability to understand and follow directions was mildly impaired; she could interact occasionally and superficially, receive instructions, and ask questions in a smaller or less public work setting; and she could cope with ordinary and routine work changes in a work setting that does not require production quotas.  (Tr. 63.)  On July 12, 2011, Mel Zwissler, Ph.D., another state agency psychologist, reviewed Plaintiff's medical records and agreed with Dr. Semmelman's assessment. (Tr. 71-74.)

## C.    Hearing Testimony

### 1.    Plaintiff's Hearing Testimony

Plaintiff was 43-years-old at the time of her hearing and had an eleventh grade education.  (Tr. 30.)  She had previously worked as a landscaper and a health aide.

6

(Tr. 30-31.)   She testified that she could no longer work because she had a bad back and depression.  (Tr. 31.)  She also stated that she was learning disabled and had chemical dependencies.  (*Id.*)  She took medication for her blood pressure and depression and did not experience side effects from them.  (Tr. 33.)  Plaintiff regularly attended AA meetings.  (*Id.*)  She did her own shopping but did not drive.  (Tr. 41.)  She testified that she could read "pretty good" and that she read the Bible.  (Tr. 42.)  She felt depressed about two or three times a week.  (Tr. 42.)  On those days she would go in her room, close the door, and watch TV or sleep.  (Tr. 42-43.)

### 2.      Vocational Expert's Hearing Testimony

Ted Massey, a vocational expert, testified at Plaintiff's hearing.  The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age who had no past work experience.  (Tr. 47.)  The individual could lift/carry 50 pounds occasionally and 25 pounds frequently; stand six out of eight hours; walk six out of eight hours; push, pull, and use foot pedals; frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, crouch, and crawl.  (*Id.*)  The individual had no manipulative or visual limitations and no communication deficits, and did not have environmental limitations other than she could not frequently be exposed to unprotected heights.  (*Id.*)  The individual could not perform complex tasks, but could perform simple, routine tasks and jobs that are low stress and do not require high production quotas.  (*Id.*)  She could not do piece rate work or work involving arbitration, negotiation, or confrontation.  (*Id.*)  The VE testified that the hypothetical individual could perform work such as a laundry worker, a hand packager, and a wire worker.  (Tr.

7

47-48.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her

8

past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and*

416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does

prevent her from doing her past relevant work, if other work exists in the national

economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§

404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.   Ms. Switzer has not engaged in substantial gainful activity since
     August 23, 2010, the application date.

2.   Ms. Switzer has the following severe impairments: affective disorder,
     chemical dependency, and disorders of the back – discogenic
     degenerative disease.

3.   Ms. Switzer does not have an impairment or combination of
     impairments that meets or medically equals the severity of one of the
     listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.   After careful consideration of the entire record, I find that Ms. Switzer
     has the residual functional capacity to perform medium work as
     defined in 20 CFR 416.967(c), with restrictions.  Specifically, she can
     lift and carry 50 pounds occasionally and 25 pounds frequently.  Ms.
     Switzer can walk, stand, and sit six out of eight hours.  She has no
     limitation on push/pull other than what was indicated for lift and carry.
     Ms. Switzer can frequently climb ramps and stairs.  She can
     occasionally climb ladders, ropes, and scaffolds.  Ms. Switzer can
     frequently balance, stoop, kneel, crouch, and crawl.  She has no
     manipulative or visual limitations and no communication deficits.  Ms.
     Switzer has no environmental limitations other than no frequent
     unprotected heights.  Ms. Switzer is limited to no complex tasks, but
     she can perform simple routine tasks.  She is limited to low stress
     work with no high production quotas or piecework.  She cannot
     perform work that involves arbitration, confrontation, or negotiation.

5.   Ms. Switzer has no past relevant work.

6.   Ms. Switzer was born in August 1968 and was 41-years-old, which is
     defined as a younger individual age 18-49, on the date she filed the

application.

7.     Ms. Switzer has a limited education and is able to communicate in English.

8.     Transferability of job skills is not an issue in this case as Ms. Switzer does not have past relevant work.

9.     Considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

10.    Ms. Switzer has not been under a disability, as defined in the Social Security Act, since August 23, 2010, the date she filed the application.

(Tr. 13-22.)

## V.     LAW & ANALYSIS

### A.     Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that

10

the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

> **B.**     **Plaintiff's Assignments of Error**

>> **1.**     **The ALJ Erred in Finding that Plaintiff's Impairment did not Meet and/or Equal Listing 12.05(C).**

Plaintiff argues that the ALJ erred in finding that she did not meet Listing 12.05(C) for intellectual disability.  According to Plaintiff, the ALJ improperly rejected sound evidence, including objective test results, in finding that Plaintiff did not meet the listing criteria.  The Commissioner responds that the ALJ's conclusion that Plaintiff did not meet Listing 12.05(C) was proper, because the evidence did not establish that Plaintiff had a physical or mental impairment that imposed an additional significant work-related limitation of function, nor did she have deficits in adaptive functioning prior to age 22 or a valid IQ score that was below 71.

Listing 12.05 sets forth the requirements for finding disability resulting from "intellectual disability."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.  In it's first paragraph, Listing 12.05 provides the diagnostic description of the impairment:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental

11

> period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

*Id*.  In other words, in order to satisfy the requirements of the Listing, an individual must, first, demonstrate the onset of the deficits described in the diagnostic description prior to age 22, and, second, satisfy the requirements of any one of the four subsections. *See Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 676 (6th Cir. 2009) (noting that an IQ below 70 was not sufficient on its own to satisfy Listing 12.05, as the claimant must "still satisfy the three-prong definition of mental retardation" and one of the subsections).

As relevant to this case, an individual may satisfy the requirement of subsection (C) by demonstrating a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*.  In other words, subsection (C) sets forth two requirements: (1) an IQ requirement; and (2) a significant limitation requirement.

Here, the ALJ determined that Plaintiff did not meet the criteria of Section 12.05(C), identifying two bases for his conclusion: First, the ALJ found that Plaintiff's March 2, 2011, full scale IQ score of 59, was not valid.  (Tr. 13.)  Second, the ALJ found that "although [Plaintiff's] school record scores do fall within the criteria of Listing 12.05(C), the evidence does not support that [Plaintiff] has a physical or other mental impairment that imposes an additional and significant work-related limitation of function."  (Tr. 13-14.)  The Court will discuss each of the three requirements of Listing 12.05(C) separately.

12

### a.  The Diagnostic Requirement

The Commissioner argues that Plaintiff is not entitled to remand in this case because she has not demonstrated that she satisfies the threshold diagnostic description of the Listing, as she cannot establish the "significant sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" required by that description.  "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r Soc. Sec.*, 240 Fed.Appx. 692, 698 (6th Cir. 2007) (citing *Heller v. Doe by Doe,* 509 U.S. 312, 328, 113 S.Ct. 2637, 125 L.Ed.2d (1993)).   Plaintiff maintains that her "IQ scores from her ninth grade school records, in combination with her enrollment in Special Education classes and very limited work history, prove that [she] had significantly subaverage general intellectual functioning with adaptive functioning deficits, which initially manifested prior to the age of 22."  (Plaintiff's Brief ("Pl.'s Br.") 10.)

In his opinion, the ALJ acknowledges that Listing 12.05 requires the aforementioned diagnostic description.  (Tr. 13.)  The ALJ does not, however, render a clear finding as to whether Plaintiff showed significant sub-average general intellectual functioning with deficits in adaptive functioning prior to age 22.   Beyond acknowledging that Plaintiff's "school record scores do fall within the criteria of Section 12.05C," the ALJ does not discuss the specific issue of whether Plaintiff exhibited deficits in adaptive functioning during the developmental period.  Furthermore, while the Commissioner argues that Plaintiff did not demonstrate deficits in adaptive functioning prior to age 22, she points to no evidence in the record to support this blanket assertion.  (Defendant's

13

Brief ("Def.'s Br.") 12.)  Instead, the Commissioner maintains that Plaintiff's high school IQ score of 70 is invalid, arguing that the score is in stark contrast with Plaintiff's past work history and her reported activities of daily living.  The Commissioner's argument on this point is not well taken, as a claimant is not required to produce a qualifying IQ score to demonstrate deficits in adaptive functioning prior to age 22.  "While the claimant *may* use a qualifying IQ score before the age of 22 to demonstrate that his subaverage intellectual functioning initially manifested during his developmental period, *see Daniels v. Comm'r of Soc. Sec.,* 70 Fed.Appx. 868, 873 (6th Cir.2003) (unpublished decision), a claimant is by no means *required* to produce an IQ score obtained prior to age 22."  *West v. Com'r Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007) (emphasis in original).

Because the ALJ has failed to make a clear finding regarding whether Plaintiff met the diagnostic requirement of Listing 12.05, this Court is unable to adequately review the ALJ's determination that Plaintiff did not satisfy the listing.  Thus, the ALJ shall, on remand, render a definitive finding as to whether Plaintiff had deficits in adaptive functioning initially manifested during the development period, and point to specific evidence in the record to support his conclusion.

### b.  The IQ Requirement

At Plaintiff's consultative evaluation with Dr. House on March 2, 2011, Plaintiff had a full scale IQ score of 59.  (Tr. 499.)  The ALJ found Plaintiff's IQ score to be invalid, noting that it was not consistent with her school records, her reported activities

14

of daily living, and her past work history.[1]  (Tr. 18.)  The ALJ acknowledged that the record also contains evidence showing that in high school, Plaintiff had a performance IQ score of 70, and that Plaintiff's "school record scores do fall within the criteria of Section 12.05C."  (Tr. 13, 255.)

The Commissioner argues that Plaintiff cannot satisfy the IQ requirement of subsection (C), because "Plaintiff did not have a valid IQ score that was below 71.  As the ALJ determined, the low IQ scores were invalid."  (Def.'s Br. 12.)  The Commissioner is mistaken on this point.  As discussed above, while the ALJ found Plaintiff's recent IQ score of 59 to be invalid, he stated that her high school scores satisfied Section 12.05(C).  The Commissioner presents evidence such as Plaintiff's

---

[1]  Plaintiff argues that the ALJ erred in finding her IQ score of 59 to be invalid due to its inconsistency with Plaintiff's school records, written activities of daily living, and past work history.  (Tr. 18.)  Dr. House, the consultative examiner who administered the IQ testing in March 2011, noted that Plaintiff's IQ score results "appear generally valid."  (Tr. 500.)  He also noted, however, that Plaintiff "seems capable of managing her activities of daily living which would suggest her intellectual limitations are academic.  A diagnosis of borderline intellectual functioning appears more appropriate especially given her history of alcohol abuse."  (*Id.*)  The regulations specifically states that "since the result of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation."  20 C.F.R. Pt. 404, Subpt. P, App. 1.  Thus, it was proper for the ALJ to consider notes from Dr. House as well as Plaintiff's school records, past work, and daily activities to determine whether her IQ score of 59 was reflective of her actual abilities, rather than taking the score at face value.  Substantial evidence, as discussed by the ALJ, exists to support the ALJ's determination that the IQ score of 59 is invalid for purposes of Listing 12.05(C).  Because Plaintiff's record includes evidence of another IQ score below 71 during her high school years, however, and the ALJ specifically found that score to be valid, the Court need not resolve the issue of whether the ALJ erred in finding Plaintiff's IQ score of 59 to be invalid.

15

past work experience, her ability to take care of her children and disabled mother, her ability to read and attend church, and her extensive daily activities to show that Plaintiff's IQ score of 70 is not reflective of her actual abilities and therefore cannot be relied upon to meet subsection (C).  (Def.'s Br. 13.)  The fact remains, however, that the ALJ did not identify or discuss these rationales for finding Plaintiff's IQ score of 70 to be invalid, and in fact came to the opposite conclusion, noting that Plaintiff's "school record scores do fall within the criteria of Section 12.05C."[2]  (Tr. 13.)  Furthermore, the Commissioner has not cited to any regulations or case law indicating that an IQ score must be sufficiently current to meet the requirements of Section 12.05(C), and the ALJ made no findings in this regard.  Accordingly, on the face of the ALJ's hearing decision, it appears that the ALJ found that Plaintiff's high school performance IQ score of 70 met the IQ requirement of subsection (C).

### c.  The Significant Limitation Requirement

With respect to subsection (C)'s significant limitation requirement, Plaintiff argues that the ALJ committed legal error when he concluded that her impairments were not sufficient to satisfy the Listing.  Specifically, Plaintiff argues that, because the ALJ concluded at step two of the sequential analysis that Plaintiff suffered from severe impairments, he necessarily determined that she suffered from impairments that

---

[2]  "[T]he courts may not accept appellate counsel's *post hoc* rationalizations for agency action.  It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993, *6 (6th Cir. Sept. 16, 1993) (unpublished opinion) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (citation omitted)).

satisfied the requirements of Listing 12.05(C).  In other words, Plaintiff argues that a severe impairment is also one that imposes a "significant work-related limitation of function," as required by subsection (C).

Although the Sixth Circuit has not addressed the precise issue of whether an ALJ's finding that a claimant has a severe impairment at step two is sufficient to satisfy the significant limitation requirement of 12.05(C),[3] Plaintiff's argument finds support from several other sources. The relevant regulations generally equate a "severe impairment"  with one that significantly limits an individual's ability to perform work activities.  For example, at step two of the sequential analysis, an ALJ considers whether a claimant has any impairment that satisfies the definition of "severe" at 20 C.F.R. §§ 1520(c) and 416.920(c).  Those sections, which are identical, provide:

> You must have a severe impairment.  If you do not have *any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities*, we will find that you do not have a severe impairment and are, therefore, not disabled.

(emphasis added).  Further, the regulations define a "non-severe impairment" as one that "does not significantly limit your physical or mental ability to do basic work

---

[3]     In *Williamson v. Secretary of Health and Human Services*, 796 F.2d 146 (6th Cir. 1986), the Sixth Circuit presumed, without discussing the matter, that a severe impairment would satisfy the additional impairment requirement.  In that case, in affirming the Commissioner's decision, the Sixth Circuit observed that the plaintiff had failed to demonstrate that he satisfied the requirements of former § 112.05(C) of Appendix 1, in part because "the ALJ found that Williamson had no severe impairment . . . *which means that he had no significant, additional physical or mental impairment* as required by the listing."  796 F.2d at 151.

activities." 20 C.F.R. § 404.1521(a).  Additionally, the introductory paragraph to the listings of mental disorders directly equates a severe impairment with one that satisfies subsection (C) of Listing 12.05:

> For paragraph (C), we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, *i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c).*

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (emphasis added).  Accordingly, the relevant regulations compel the conclusion that a severe impairment at step two satisfies the significant limitation requirement of Listing 12.05(C).

Those circuit courts that have considered the issue have uniformly concluded that, where an ALJ determines, at step two of the sequential analysis, that an impairment is severe, that impairment is sufficient to satisfy the significant limitations requirement of Listing 12.05(C).  *See, e.g., Cook v. Bowen*, 797 F.2d 687, 690-91 (8th Cir. 1986) (noting case law and determining that "where a claimant's impairment is found to be severe under the second step, it automatically satisfies the significant limitations standard of section 12.05(C)"); *Branham v. Heckler*, 775 F.2d 1271, 1273 (4th Cir. 1985) ("The plaintiff correctly argues that the significant limitation under section 12.05(C) need not be disabling in and of itself. If the plaintiff's physical impairment were required to be independently disabling, section 12.05(C) would be rendered meaningless."); *Nieves v. Sec'y of Health and Human Servs*, 775 F.2d 12, 14 (1st Cir. 1985) ("Because claimant's impairment was found to be severe, *a foriori* it satisfies the significant limitations standard."); *Edwards v. Heckler*, 736 F.2d 625, 631 (11th Cir.

18

1984) ("In other words, by showing the existence of a severe impairment, Edwards has shown that he meets the second-half requirement of section 12.05(C)").  Further, at least one other court in this Circuit has applied the same reasoning to make the same conclusion.  *See, e.g,* *Breitenstein v. Astrue*, No. 3:10-CV-032, 2011 WL 1235018 (S.D. Ohio Jan. 6, 2011) (Ovington, Mag. J.) ("In other words, the ALJ's determination at Step 2 that Plaintiff's stuttering, depression, and anxiety were 'severe' impairments under 20 C.F.R. 416.920(c), he had effectively determined that these impairments imposed 'additional and significant work-related limitation of function' in satisfaction of Listing 12.05C."), *report and recommendation adopted sub nom.* *Breitenstein v. Comm'r of Soc. Sec.,* 3:10-CV-032, 2011 WL 1234902 (S.D. Ohio Mar. 30, 2011).

In this case, at step two of his sequential analysis, the ALJ concluded that Plaintiff had three severe impairments – affective disorder, chemical dependency, and disorders of the back (discogenic degenerative disease).  (Tr. 13.)  He also concluded that these impairments caused "significant limitations in [Plaintiff's] ability to perform basic work activity."  (*Id.*)  Under the relevant regulations, and as suggested by the decisions of other federal courts, this finding was sufficient to satisfy the significant limitations requirement of Listing 12.05(C).  Accordingly, substantial evidence does not support the ALJ's conclusion that the evidence fails to demonstrate that Plaintiff has a physical or other mental impairment that imposes an additional and significant work-related limitation of function.  Thus, as discussed above, Plaintiff's case is remanded with instructions to the ALJ to consider, in light of record evidence demonstrating that Plaintiff satisfied both the IQ requirement and the significant limitation requirement of

subsection (C), whether Plaintiff satisfies the diagnostic requirement of Listing 12.05 such that she is entitled to benefits.

### 2.   The ALJ Erred in Failing to Find that Plaintiff's Learning Disorder was a Severe Impairment.

Plaintiff argues that the ALJ erred in failing to find that her learning disorder was a severe impairment at step two of the sequential evaluation.  Plaintiff's argument is not well taken.  As a preliminary matter, even if the ALJ erred in concluding, at step two of his analysis, that Plaintiff's learning disorder was non-severe, that error is likely harmless.  Although the determination of severity at the second step of a disability analysis is a *de minimis* hurdle in the disability determination process, *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988), the goal of the test is to screen out totally groundless claims, *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir.1985).  Once an ALJ determines that a claimant suffers a severe impairment at step two of his analysis, the analysis proceeds to step three; accordingly, any failure to identify other impairments or combinations of impairments as severe would be only harmless error because step two would be cleared.  *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Maziars v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").  An ALJ must consider all of a claimant's impairments, severe and not severe, at every subsequent step of the sequential evaluation process.  *See* 20 C.F.R. § 404.1545(e).

20

Here, although the ALJ concluded that Plaintiff's learning disorder was non-severe, he found that her affective disorder, chemical dependency, and disorders of the back were severe impairments.  Accordingly, Plaintiff cleared step two of the analysis. *See Anthony*, 266 F. App'x at 457.  Furthermore, although the ALJ did not find that Plaintiff's learning disorder was a severe impairment at step two, he nonetheless assessed the relevant medical and opinion evidence related to her mental impairments when determining her RFC.  (Tr. 16-20.)  Despite the evidence tending to show that Plaintiff had a learning disorder, the ALJ concluded that Plaintiff was capable of performing simple, routine tasks; low stress work with no high production quotas or piecework; and no work involving arbitration, confrontation, or negotiation.  (Tr. 16.)  Thus, even if the ALJ erred in failing to find that Plaintiff's learning disorder was "severe," the error would be harmless, as the ALJ found that Plaintiff was capable of performing a limited range of medium work despite her mental limitations.  Accordingly, Plaintiff's second assignment of error does not present a basis for remand of her case.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: June 11, 2014